JORGE MALDONADO ROSADO, Petitioner and Appellant, *v.* JUAN S. BRAVO, WARDEN, ETC., Respondent and Appellee.

No. 10627.   Argued February 11, 1952.—Decided March 11, 1952.

*E. Martínez Avilés* for appellant. *Víctor Gutiérrez Franqui, Attorney General, J. Rivera Barreras, Fiscal of the Supreme Court,* and *Frank Vizcarrondo Vivas, Assistant Fiscal,* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the court.

In the complaint filed in the Municipal Court of Puerto Rico, San Juan Section, Jorge Maldonado is charged with "willfully and maliciously having his acknowledged natural daughter called Iris Nereida Maldonado, seven months old, in a state of complete abandonment, without legal excuse." The case was called for trial and after discussing a certain question of law he raised, he was sentenced to serve six months' imprisonment in jail, but the sentence was suspended provided he gave a $25 monthly allowance to his aforesaid daughter. Maldonado was jailed and thereafter filed a petition for habeas corpus in the District Court of Puerto Rico, San Juan Section. He alleged therein, among other things, that the Municipal Court had sentenced him without jurisdiction. The petition was granted, whereupon the case was heard on its merits and dismissed. The petitioner appealed to this Court and alleges now that the District Court erred in deciding that Act No. 108 of 1940 was not applicable to his case. We shall make an analysis of said Act to determine whether he is right or not.

The first Section thereof provides that first the father and then the mother are obliged to feed their illegitimate children under 16 years of age, whether acknowledged or not. Section 2 provides that the father or the mother who fails in that obligation shall suffer the proper penalty for abandonment and neglect of minors according to the provisions of the Penal Code. Section 3 provides that the formal demand mentioned in the preceding Section shall be ordered

by the municipal judge [1] of the municipality where the presumptive parents reside, on a written application sworn to by the person having the minor under his care. Section 4 provides that the person on whom such formal demand is made shall appear within eight days before the officer who made the demand and shall admit or deny the paternity; and that if he should admit it he shall state whether he or she agrees to fulfill his or her obligation of providing the minor with food. Section 5 provides that if after the presumptive father or mother has appeared before the municipal judge or the justice of the peace and has admitted the paternity, he or she fails to comply with his or her obligation towards the minor, said judge shall send the proper papers to the Juvenile Court of the judicial district [2] where the minor resides, and that the judge of said court shall order, if probable cause exists, that the corresponding complaint be filed by the complainant or by a probation officer; as well as that the jurisdiction of juvenile courts shall be exclusive to take cognizance of the cases included under that Act and that appeal may be taken to the Supreme Court by the father or mother found guilty. And § 6 provides that when a father or a mother who has admitted the paternity of the minor has been sentenced under that Act, the judge taking cognizance of the case may suspend the judgment under such conditions as he may consider it well to impose, for the welfare of the abandoned child.

The only question to be determined here is, therefore, whether it being alleged in the complaint filed in the municipal court that the abandoned minor was an acknowledged natural child of the defendant—petitioner herein—it was

---

[1] Section 5 suggests that the justice of the peace of the locality where the presumptive parents of the minor reside may also make the formal demand.

[2] Section 24 of Act No. 432 of May 15, 1950 (Sess. Laws, pp. 1126, 1134), To Establish the Organic Act of the Judiciary of Puerto Rico, creates a Minor's Guardianship Court in each of the districts of the District Court of Puerto Rico.

necessary to demand him formally as provided by Act No. 108, *supra*, before he could be criminally prosecuted. Let us see:

Although the aforesaid Act imposes on the father the obligation to feed his illegitimate children under 16 years of age, whether acknowledged or not, such obligation is not new in our law, inasmuch as pursuant to the provisions of the Civil Code legitimate children have always been entitled to receive support from their parents.[3] Therefore, the above-mentioned Act of 1940 did not create in favor of illegitimate children any substantive right theretofore nonexistent. In fact, its main purpose was none other than to have, by means of a summary proceeding, the illegitimate child receive support from the person who begot him. For that purpose it provided that the father be formally demanded by the judge of the town where he resides, after the person having the minor under his care has filed an affidavit in connection with the latter's abandonment, in order that the former may declare whether he admits or denies the paternity. The obligation to feed the minor was already imposed by the Act, whose ends are not futile. *Rivera* v. *Cruz*, 67 P.R.R. 723, 724. It would, of course, be futile to demand the father of an acknowledged natural child to appear before the justice of the peace or the municipal judge in order to admit the paternity. Hence, if the complaint discloses, as is the case here, that the abandoned minor is an acknowledged natural child of the defendant, it is impossible to conclude that due to the failure to make the formal demand mentioned in the Act, the court which took cognizance of the action of abandonment of minors lacked jurisdiction on that account.

It was bearing the foregoing in mind that in our opinion in *People* v. *Lamboy*, 59 P.R.R. 173, 176, we said that "no presumptive father can be prosecuted and punished for abandonment of his minor child, unless he has been first formally

---

[3] See § 128 of the Civil Code, 1930 ed.

required." See also *People* v. *Emanuelli*, 61 P.R.R. 202, 204, where we used similar language. We spoke in those cases of presumptive fathers, not meaning the father of an acknowledged natural child, but of an illegitimate child whose paternity must be determined, either by the acknowledgment of the presumptive father after having been formally demanded to do so or by proving it within the criminal action of abandonment of minors. To this last effect see *People* v. *Rodríguez*, 67 P.R.R. 688.

The judgment appealed from will be affirmed.